UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| AMES CONSTRUCTION, INC., a Minnesota corporation,<br><br>Plaintiff,<br><br>v.<br><br>CLARK COUNTY, a political subdivision of the State of Nevada; and CLARK COUNTY DEPARTMENT OF PUBLIC WORKS; DOES I through X; and ROE CORPORATIONS I through X,<br><br>Defendants. | Case No. 2:18-cv-00299-JCM-EJY<br><br>**ORDER** |

Before the Court is Defendants' Motion for Protective Order. ECF No. 48 ("Defs.' Mot."). The Court has also considered Plaintiff's Response to Clark County's and Clark County Department of Public Works' Motion for Protective Order (ECF No. 54, or "Pl.'s Response") and Defendants' Reply in Support of Motion for Protective Order (ECF No. 57, or "Defs.' Reply"). The Court finds as follows.

**I.     BACKGROUND**

This case concerns a public works contract for construction of a portion of the "Wash," a flood channel feeding part of the Las Vegas Valley's excess water into Lake Mead, which the Court refers to as the "Ames Project." The Ames Project is part of a larger Construction Manager at Risk contract (the "CMAR Project") entered into between the Las Vegas Paving Corporation ("LVP") and Defendant Clark County. ECF No. 3 ("Compl.") ¶ 28. Because LVP and Clark County could not agree on a price for the last portion of the CMAR Project, the County put that portion up for competitive bid. Compl. ¶ 8.

Plaintiff Ames Construction, Inc. ("Ames") bid on the last portion of the CMAR Project and was awarded the contract. Compl. ¶¶ 13, 15. Plaintiff alleges that unforeseen "severe water flow events" impacted its ability to timely finish the Ames Project and that it notified Defendant Clark

County of these issues. Compl. ¶¶ 51–52. Ames also claims that the water flow events caused it to incur more than $14,000,000 in losses for which Clark County has denied reimbursement. *Id*. ¶ 53.

On February 16, 2018, Plaintiff filed its Complaint alleging (1) breach of contract; (2) breach of implied warranty; (3) breach of implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) failure to comply with NRS 338.1435; (6) negligent misrepresentation; (7) cardinal change; and (8) impossibility/impracticability of performance. *Id*. ¶¶ 63–143.

Discovery commenced in this case on April 3, 2018, following the parties' Fed. R. Civ. P. 26(f) conference. ECF No. 11. On October 10, 2019, Ames notified Defendants that it sought to take the deposition of Clark County Commissioner Larry Brown, who sat as the Chairman of the Clark County Regional Flood Control District ("CCRFCD") during the CMAR Project and the flood events which impacted the work performed by both LVP and Ames. ECF No. 48-3 at 1–4 ("Ex. 1-A"). The same day, Ames amended its deposition notice to include Commissioner Brown's official title. *Id*. at 5–8 ("Ex. 1-B"). Plaintiff represents that it intends to inquire about the following topics:

- The Commission's Decision to initially award the contract on a CMAR basis as opposed to the design/build methodology;

- The selection process of the CMAR;

- Whether the Commission was advised that Phase I of the Project exceeded the Engineer's Estimate;

- What information, if any, the Commission was provided in deciding to reject LVP's CMAR proposal and put the Project out for competitive bids;

- The County's efforts to comply with NRS 338.1435 in performing a Constructability Review of the plans and specifications before awarding the Project to Ames;

- The estimates prepared by the County's consultants [and] provided to the CCRFCD and County Commissioners relating to the Project;

- [Whether] the Commission ha[d] budget concerns regarding LV Paving's proposal; and[,]

- Commissioner Brown's role as the Chairman of the CCRFCD and the extent and scope of the Project in relation to upstream projects contemplated by the CCRFCD[.]

Pl.'s Response at 5–6. More generally, "Ames seeks to depose . . . Commissioner [Brown] to find out why the Commission decided not to proceed with the LVP CMAR," and to understanding the information the Commission "considered" in making this decision. *Id*. at 12.

Defendants note that Ames deposed a variety of party representatives and experts including the General Manager of CCRFCD and various County engineers from the Department of Public Works. ECF No. 48-1 ("Lenhard Decl.") ¶¶ 8–9. Defendants state that "[d]uring one of these depositions, counsel for the County raised an issue with respect to Commissioner Brown's deposition – namely, that most, if not all, of the information known by him with respect to the CMAR Project and the [Ames] Project would be protected by the deliberative process privilege." Defs.' Mot. at 4–5 (internal citation omitted).

Ames amended its deposition notice a second time and rescheduled Commissioner Brown's deposition for November 14, 2019. ECF No. 48-3 at 9–16 ("Ex. 1-C" and "Ex. 1-D"). Counsel for the respective parties were unable to reach an agreement on whether Commissioner Brown's deposition should go forward before this time, despite holding a telephonic meet-and-confer (Lenhard Decl. ¶ 22–24) and communicating through several email exchanges (ECF No. 48-3 at 17–19 ("Ex. 1-E")).[1] Accordingly, the instant Motion and accompanying briefings followed.

## II. <u>DISCUSSION</u>

Fed. R. Civ. P. 26(b)(1) states that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[1] In a November 1, 2019 email, Defendants wrote to Plaintiff stating that he had "conferred with Commissioner Brown . . . concerning the depo notice. [Commissioner Brown] has no recall of [the CMAR] project or the underlying votes approving the 2 contracts. All he can do is verify his vote which is public record." Ex. 1-E. Plaintiff replied a week later expressing his belief that he is "entitled to present documents to [Commissioner Brown] to refresh his recollection and ask him about things he was presented as both commissioner and chairman at the time the RFP was issued for the CMAR, the decision was made to solicit bids, the budget issues at the time, etc.." *Id*.

3

Further, Fed. R. Civ. P. 26(b)(2)(C) requires a court to:

> limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

In accordance with these directives, courts are empowered to enter a protective order "protect[ing] party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]" Fed. R. Civ. P. 26(c)(1)(D).

Defendants argue that a protective order barring Commissioner Brown's deposition is appropriate because the sought information is protected by the deliberative process privilege and the legislative privilege. Defs.' Mot. at 7. Because the Court finds that Commissioner Brown's deposition should not go forward on the basis of the deliberative process privilege, it declines to reach Defendants' alternative legislative privilege argument.

### 1. The deliberative process privilege may apply to deposition testimony.

As stated above, the Federal Rules of Civil Procedure precludes discovery of privileged information. Fed. R. Civ. P. 26(b)(1). Here, Defendants claim Commissioner Brown's planned deposition falls within the deliberative process privilege and, therefore, a protective order barring his deposition is appropriate. Defs.' Mot. at 8–9.

The deliberative process privilege "permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984), *citing N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The privilege was "developed to promote frank and independent discussion among those responsible for making governmental decisions, . . . and also to protect against premature disclosure of proposed agency policies or decisions. . . . The ultimate purpose of the privilege is to protect the quality of agency decisions." *Id.* (internal citations omitted).

4

As a preliminary matter, Ames asserts that the deliberative process only "applies to instances where a party seeks disclosure of *documents* from a government body—it does not apply when a party seeks to take the *deposition* of a government official to ask him or her questions about factual matters or documents already disclosed." Pl.'s Response at 7 (emphases added). To the contrary, this district court has applied the deliberative process privilege to deposition testimony. *E.E.O.C. v. Gold River Operating Corp.*, No. 2:04-cv-01349-LRL, 2007 WL 983853, at *8 (D. Nev. Mar. 30, 2007) ("There is no question that the [deposition] questions relate to the [plaintiff's] deliberations. . . . Thus, the [deliberative process] privilege applies."), *citing North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1121 n.1 (N.D. Cal. 2003) (providing that the deliberative process privilege applies to deposition testimony as well as written documents) (citations omitted). In yet another case from this district, the court "acknowledged [that] the [deliberative process privilege] could apply to deposition testimony[.]" Defs.' Reply at 4, *citing Giezie v. Valley Health Syst., LLC*, No. 2:12-cv-00036-ECR-GWF, 2012 WL 3929446, at *8 (D. Nev. Sept. 7, 2012). In any event, as Defendants convincingly point out, "if only documents are protected [by the deliberative process privilege], oral communications discussing the contents of those documents would be subject to disclosure." *Id*. Such a conclusion is illogical, provided that the goal of the deliberative process privilege is to encourage candid discussions of ideas and to improve the government decision-making process. *Warner Commc'ns Inc.*, 742 F.2d at 1161. For these reasons, Plaintiff's contention that the deliberative process privilege only applies to documents is unpersuasive. The Court therefore finds that the deliberative process privilege may apply to prospective deposition testimony.

**2. The deliberative process privilege applies to Commissioner Brown's planned deposition.**

To be protected under the deliberative process privilege, the sought information must be both (1) predecisional, which means that it was "generated before the adoption of an agency's policy or decision," and (2) "deliberative in nature, containing opinions, recommendations, or advice about agency policies. . . . Purely factual material that does not reflect deliberative processes is not protected." *Id*. (internal citations omitted). To establish that sought information is "predecisional," the government "must identify an agency decision or policy to which the [information] contributed.

. . . To qualify as part of [the] 'deliberative' process, the materials requested must consist of opinions, recommendations, or advice about agency policies [or decisions]." *DR Partners v. Bd. of Cnty. Com'rs of Clark Cnty.*, 6 P.3d 465, 469 (Nev. 2000) (internal citation omitted). In the second part of this analysis, the Court must consider whether the sought "factual material is so interwoven with the deliberative material that it is not severable." *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000) (internal citation omitted). "The [government] agency bears the burden of establishing, with particularity, the character of the decision, the deliberative process involved, and the role played by the [sought information] in the course of that process." *Clark Cnty. School Dist. v. Las Vegas Review-Journal*, 429 P.3d 313, 318 (Nev. 2018) (internal citations and quotation marks omitted).

Here, Defendants contend that Commissioner Brown's deposition should be barred because:

> the sought information is . . . predecisional, as it is calculated to determine the basis for and discussions surrounding the County's decision to put Ames' portion of the Wash out for competitive bid instead of continuing with construction under a CMAR arrangement. In addition, it is deliberative because Ames seeks to determine the opinions of high-ranking County personnel, including Commissioner Brown, as to that decision. Ames also apparently seeks to determine what recommendations or advice were given regarding that decision – all of which are deliberative in nature.

Defs.' Mot. at 9.

The Court agrees. The information sought is predecisional because it was generated in anticipation of Clark County's decision to open the contested portion of the Wash for competitive bid, and to eventually award the Ames Project to Ames. As previously stated, "[u]nder the [deliberative] privilege, governmental entities may conceal public records only if the entity can prove that the relevant public records were part of a predecisional and deliberative process that led to a specific *decision or policy*." *Clark Cnty. School. Dist.*, 429 P.3d at 318 (internal citations omitted) (emphasis added). Although Ames disputes whether Commissioner Brown's determinations regarding the Ames Project amounted to an "*important* agency policy," that debate is inconsequential to our conclusion today. Pl.'s Response at 12 (emphasis added). At this juncture, the County was required to identify a *decision or policy* to which the sought information contributed,

which it has done. *DR Partners*, 6 P.3d at 469. Ames concedes that the County arrived at a "*decision to reject LVP's CMAR and put the Ames' Project out for competitive bid.*" Pl.'s Response at 12 (emphasis added).

The information sought is also deliberative. In contrast, Plaintiff maintains that all of the topics about which it seeks to question Commissioner Brown are purely factual and, therefore, unprotected by the deliberative process privilege. Pl.'s Response at 9–10. Plaintiff's characterization is unpersuasive because Ames seeks factual information that is inextricably intertwined with Clark County's policy decisions. *Fernandez*, 231 F.3d at 1247 (internal citation omitted). As listed below, the topics Plaintiff seeks to depose Commissioner Brown about are unseverable from the deliberative process underlying Clark County's decision in this matter:

1. The Commission's decision to initially award the contract on a CMAR basis as opposed to the design/build methodology;

2. The selection process of the CMAR;

3. Whether the Commission was advised that Phase I of the Project exceeded the Engineer's Estimate;

4. What information, if any, the Commission was provided in deciding to reject LVP's CMAR proposal and put the Project out for competitive bids;

5. The County's efforts to comply with NRS 338.1435 in performing a Constructability Review of the plans and specifications before awarding the Project to Ames;

6. Estimates related to the Project that the County's consultants prepared and provided to the CCRFCD and County Commissioners;

7. Whether the Commission had budget concerns regarding LVP's proposal; and,

8. Commissioner Brown's role as the Chairman of the CCRFCD and the extent and scope of the Project in relation to upstream projects contemplated by the CCRFCD.

First, the Court agrees that "[i]tems 1 and 7 . . . are not facts at all; rather they are questions aimed at determining mental processes and . . . are clearly protected by the [deliberative process] privilege." Defs.' Reply at 6. Second, all of the remaining facts Plaintiff is seeking in the above topics "relate to two decisions of the Commission: (1) initially awarding a CMAR to LVP instead of using competitive bidding; and (2) putting the last portion of that project out to competitive bid, which

7

was eventually awarded to Ames." *Id*. Even Ames admits that it is seeking to depose Commissioner Brown to ascertain "why the Commission *decided* not to proceed with the LVP CMAR and put the Project out for bid[, as well as to determine] . . . the information provided to . . . and *considered* by [the Commission]." Pl.'s Response at 12 (emphases added). "In other words, . . . the unveiling of [these] factual materials would be tantamount to the publication of the evaluation and analysis of the multitudinous facts conducted by the agency, [and therefore,] the deliberative process privilege applies." *Nat'l Wildlife Federation v. U.S. Forest Serv.*, 861 F.2d 1114, 1119 (9th Cir. 1988) (internal citation and quotation marks omitted).

This case is distinguishable from *Giezie*, where the court permitted a defendant's deposition to go forward despite non-party U.S. Equal Employment Opportunity Commission's ("EEOC") emergency request for a protective order. 2012 WL 3929446. There, the defendant sought to question an EEOC investigator solely about the "factual underpinnings" of his investigation, and "[d]efendant . . . stated that the EEOC may properly assert objections to specific questions during the deposition on the basis of the deliberative process privilege if a question reasonably appears to seek privileged information." *Id*. at *8. At present, apart from Ames' assertion that it "believes it can complete its questioning of Commissioner Brown in less than 3 hours," no analogous evidentiary limitations at deposition have been proposed. Pl.'s Response at 15–16. Plaintiff's suggested time limit does nothing to cure the impermissible content of information about which it seeks to question Commissioner Brown.

Notwithstanding the above, Ames insists that the deliberative process privilege does not apply here because the government's actions are in question. Pl.'s Response at 10–11, *citing Clark Cnty. School Dist.*, 429 P.3d at 318. It may be true, as Plaintiff contends, that if a "cause of action is directed at the government's intent, . . . it makes no sense to permit the government to use the [deliberative process] privilege as a shield." *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998). However, the cases to which Plaintiff cites are distinguishable from the present matter. The former case concerns an alleged Title

VII sexual harassment violation, and the latter involves a fraudulent conveyance claim. *See generally Clark Cnty. School Dist.*, 429 P.3d 313; *id*. In contrast, none of Ames' causes of action turn on the County's intent.

The deliberative process privilege applies to the information Plaintiff seeks from Commissioner Brown by way of deposition because Plaintiff seeks to question him on predecisional and deliberative processes and facts that formed the basis of the determination of his actions.

### 3. Plaintiff has not demonstrated the necessity of deposing Commissioner Brown.

After "the court determines that [sought information] is privileged, it must still determine whether the [information] should be withheld. . . . [T]he deliberative process privilege is a qualified privilege." *DR Partners*, 6 P.3d at 471 (internal citation omitted). Because the deliberative process privilege is a qualified one, the party seeking disclosure may be able to overcome the privilege by showing that its need for the information outweighs the government's interest in nondisclosure. *Warner Commc'ns Inc.*, 742 F.2d at 1161 (internal citations omitted).

> The Ninth Circuit in *Warner Communications* set forth four non-exclusive factors that courts may consider in determining whether the litigant has met this requirement: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id*. "Other factors that a court may consider include: (5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law." *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003).

*U.S. Equal Emp't Opp. Comm'n v. Chipotle Mexican Grill, Inc.*, Case No. 17-cv-05382-BLF, 2019 WL 3811890, at *4 (N.D. Cal. Aug. 1, 2019).

Under this multi-factor balancing test, the Court finds that Commissioner Brown's deposition should not go forward. The sought evidence is relevant, this litigation is serious, and Clark County is a defendant in this matter. However, these factors do not tip the balance in favor of permitting Commissioner Brown's deposition to proceed. Perhaps, most importantly, forcing the government to disclose its deliberative process in a case such as this might prevent Clark County officials from conducting thorough investigations in anticipation of future public projects. In other words, Plaintiff's interest in judicial fact finding must defer to the integrity of the government's decision-

making process.  Moreover, Plaintiff does not allege government misconduct, but, rather, challenges the County's privileged decision to not proceed with the LVP CMAR and to put the Project out for bid.

Finally, the relevant evidence was available to Plaintiff through other channels.[2]  Discovery has been pending in this matter since April 3, 2018 (ECF No. 11), and Ames and Clark County stipulated to permit each party to take up to twenty depositions (ECF No. 39).  Plaintiff nonetheless maintains that Commissioner Brown is "uniquely qualified" to answer questions related to both the Commissioner and CCRFCD.  Pl.'s Response at 15.  Plaintiff's contention is belied by the availability of other fact witnesses, some of whom it has already deposed, including CCRFCD's General Manager and multiple County engineers from the Department of Public Works.  Lenhard Decl. ¶ 8–9.  Further, Ames admits that Commissioner Brown "is one of *seven* Commissioners" on the Clark County Commission.  Pl.'s Response at 14 (emphasis added).  Therefore, this Court must limit discovery, in part, because Plaintiff "has had ample opportunity to obtain the information by discovery in the action[.]" Fed. R. Civ. P. 26(b)(2)(C)(ii).  In total, Plaintiff has not made a sufficient showing of necessity to overcome the deliberative process privilege.

### III. CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion for Protective Order (ECF No. 48) is GRANTED.  Plaintiff shall not be permitted to depose Clark County Commissioner Larry Brown for purposes of this action.

DATED THIS 6th day of April, 2020.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

---

[2] The parties discuss the availability of other fact witnesses in separate sections in their respective briefs; however, the Court finds this discussion appropriate under its analysis of the deliberative process privilege.

10