UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| AMES CONSTRUCTION, INC., | Case No. 2:18-CV-299 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| CLARK COUNTY, et al., | |
| Defendant(s). | |

Presently before the court is Clark County and Clark County Department of Works's (collectively, "the county") motion for summary judgment. (ECF No. 52). Ames Construction, Inc. ("Ames") filed a response (ECF No. 62), to which the county replied (ECF No. 64).

Also before the court is Ames's request for oral argument. (ECF No. 66).

**I.  Background**

The instant action arises from a variety of contractual claims resulting from a private contractor's performance of a government construction contract.

In April 2013, the county issued a request for a construction manager at risk ("CMAR") to assist in designing and building a flood wash to mitigate flooding issues in the city of Las Vegas. (ECF No. 62 at 4). Ames submitted a proposal in response to this request, in which it identified a flooding risk at the job site. *Id.* at 5. The county ultimately awarded the CMAR contract to Las Vegas Paving ("LVP"). *Id.* LVP began constructing the flood wash, but it left the project due to a dispute over cost. *Id.* at 11.

On July 9, 2015, the county issued an invitation to bid for the remainder of the project, which entailed lining the Las Vegas Wash (the "Wash") from Nellis Boulevard to Stewart Avenue with concrete. (ECF No. 3 at 3). Subsequent amendments to the project included the

**James C. Mahan**
**U.S. District Judge**

construction of a pedestrian bridge and trail work. *Id.* On September 15, 2015, the county awarded Ames the contract for $20,440,260.05. *Id.* Separate Ames offices prepared the 2013 CMAR proposal and the 2015 bid. (ECF No. 62 at 5–6). Neither of the Ames offices knew of the other's work. *Id.*

The contract contained language indicating the average flow of water through the project site was 9 cubic feet per second ("cfs"). (ECF No. 3 at 4). Pursuant to this clause and others requiring submission of a "dewatering" plan to control potential flooding at the site, Ames submitted a plan allowing the dewatering of flows up to 13 cfs, in excess of the 9 cfs the county indicated as typical. *Id* at 5.

After beginning construction, Ames experienced significant delays due to flooding. *Id.* at 8. The flow of water was much greater than the 9 cfs indicated in the contract. *Id.* Ames measured over 10,000 cfs at the worksite, and requested additional time to complete the project after altering plans regarding sequencing, necessary equipment, and repairs. *Id.;* (ECF No. 62 at 16). Ames alleges its damages caused by the delays and necessary repairs are over $14,000,000. (ECF No. 3 at 8).

Ames subsequently brought the instant suit alleging a variety of contract claims centered on the contention that the county affirmatively misrepresented the potential for flooding by specifying 9 cfs as the typical flow rate. (*See generally* ECF No. 3). The county now moves for summary judgment on all claims. (ECF No. 52).

**II.   Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to

**James C. Mahan**
**U.S. District Judge**

withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

**James C. Mahan**
**U.S. District Judge**

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

### III. Discussion

As an initial matter, the court has sufficient information to decide the instant motion based on the filings. LR 78-1. Ames's request for oral argument is denied. (ECF No. 66).

*A. Damages*

The county contends that because Ames proceeds under a "total cost" theory of damages, it is precluded from recovery on all of its contractual claims. (ECF No. 52 at 15–18). Ames asserts it satisfies a "modified total cost" calculation. (ECF No. 62 at 18–20).

The total cost theory awards the contractor the difference between cost of performance and the bid price. Most jurisdictions disfavor use of total cost damages. *See, e.g.*, *Elte, Inc. v. S.S. Mullen, Inc.*, 469 F.2d 1127, 1131 (9th Cir. 1972); *Raytheon Co. v. White*, 305 F.3d 1354, 1365 (Fed. Cir. 2002). Under Nevada law, to assert a claim for total cost damages, a contractor must prove: "(1) the impracticability of proving actual losses directly; (2) the reasonableness of its bid; (3) the reasonableness of its actual costs; and (4) lack of responsibility for the added costs." *Insulation Contracting & Supply, Inc. v. S3H, Inc.*, No. 62856, 2015 WL 5774180, at *4 (Nev. Sept. 29, 2015).

James C. Mahan
U.S. District Judge

A modified total cost damages calculation uses the same four elements but eases the burden for the contractor. *See Raytheon Co.*, 305 F.3d at 1365. A modified total cost damages calculation awards the contractor the total cost of the contract minus the bid price, with adjustments made for a contractor's inability to satisfy the four elements, such as excluding costs associated with delays the contractor caused, or adjusting the bid price for miscalculations. *See Propellex Corp. v. Brownlee*, 342 F.3d 1335, 1339 (Fed. Cir. 2003); *Boyajian v. Untied States*, 423 F.2d 1231, 1240 (Ct. Cl. 1970).

The parties dispute both the type of damages requested and whether Ames meets the requirements to recover. (*See generally* ECF Nos. 52; 62). The county contends that Ames's calculation does not alter the damages substantially enough to qualify as a modified total damages calculation since it takes no responsibility for any of the delays. (ECF No. 64 at 11–12). There is no formula determining when a claim is sufficiently altered to constitute modified total damages. *See Boyajian*, 423 F.2d at 1240. Instead, modified total damages are calculated to account for the contractor's responsibility. *See Propellex*, 342 F.3d at 1339.

Ames does not include a modification assuming responsibility for any of the delay costs because the delays are the heart of this suit. (*See generally* ECF Nos. 3; 52; 62). All of Ames's claims are predicated on the county's responsibility for the delays due to its alleged misrepresentation of flow levels. (*See* ECF No. 3 at 9–17). Nonetheless, the county now asks the court to force Ames to take responsibility for those delays in its damages calculation, notwithstanding the claims. (ECF No. 52 at 15–17). Here, should Ames prevail on its claims, it would necessarily show that it is not responsible for the delays, thus satisfying the fourth element of total damages. *See Insulation Contracting*, 2015 WL 5774180, at *4. For that reason, the court cannot dismiss the claims based on the damages calculation until the claims disputing responsibility have been adjudicated.

As to the other elements of damages, there is no real dispute as to the reasonableness of the costs or the initial bid. Further, the evidence construed in the light most favorable to Ames suggests proving damages by any other means might be impracticable. Ames's damages expert testified that the nature of the available evidence might not lend itself to a more exact

calculation. (ECF No. 62 at 19). For those reasons, the court denies summary judgment on the basis of Ames's damages claim.

### B. Ames's Duty to Investigate

The county also contends that Ames forfeited its right to bring claims under the bid contract because it failed to satisfy its legal duty to obtain additional rainfall data. (ECF No. 52 at 19–21). Ames counters that, under the "superior knowledge" doctrine, the county had a legal duty to disclose information about flooding. (ECF No. 62 at 20–22).

The superior knowledge doctrine states a contractor may recover when the owner fails to provide the contractor with pertinent information that results in an increase in costs. *Hercules, Inc. v. United* States, 24 F.3d 188, 196 (Fed. Cir. 1994). The superior knowledge doctrine applies when:

> (1) a contractor undertakes to perform without vital knowledge of a fact that affects performance costs or duration; (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information; (3) any contract specification supplied misled the contractor, or did not put it on notice to inquire; and (4) the government failed to provide the relevant information

*Am. Ship Bldg. Co. v. United States*, 654 F.2d 75, 79 (Ct. Cl. 1981).

The evidence, construed in the light most favorable to Ames, indicates that the county had information it did not disclose. (ECF No. 62 at 13–14). It had knowledge from prior work on the site indicating a higher water flow level that it did not share. *Id.* While there was disclaimer language, it is not apparent that the term put Ames on notice to inquire further. *See John Massman Contracting Co. v. United States*, 23 Cl. Ct. 24, 32 (1991) (holding that there must be facts sufficient to put the contractor on notice to the inaccuracy of the owner's proffered figures); (ECF No. 3 at 4). Because there is a genuine dispute of material fact, the court denies summary judgment based on the superior knowledge doctrine.

### C. Breach of Contract

In its breach of contract claim, Ames first asserts that the county breached by "failing to pay the [c]ontract [p]rice." (ECF No. 3 at 10). In its motion, the county fails to address this allegation, and Ames never raises the issue again. Accordingly, the court will not grant summary

judgment to resolve an issue neither party briefs. *Caravel/Woodwind Charters, Inc. v. Tahoe Keys Marina, LLC*, 438 F. Supp. 2d 1174, 1180 n. 4 (E.D. Cal. 2006). The county's failure to pay is an independent basis for a breach of contract claim. (*See* ECF No. 52 at 22–23).

### D. Breach of Implied Warranty of Plans and Specifications

If a contractor is bound to build a structure in accordance with plans furnished by the owner, there is an implied warranty protecting the adequacy of those plans. *United States v. Spearin*, 248 U.S. 132, 136–37 (1918). This implied warranty of plans and specifications applies when the owner furnishes plans by which the contractor is to substantially abide, even if the contractor fails to visit the site or investigate the plans. *Id*.

On the other hand, a performance specification—when the owner describes the result it wishes to achieve and defers to the contractor as to the means of reaching that goal—is not subject to this implied warranty. *J.L. Simmons Co. v. United States*, 188 Ct. Cl. 684, 689 (1969). Thus, an owner provides a performance specification when it gives information without warranting adequacy or accuracy and the contractor maintains discretion over use of that information. *John Massman Contracting Co.*, 23 Cl. Ct. at 33. The warranty does not apply to performance specifications. *Id.*

Here, the county did not provide Ames with any specific plans as to the project. (ECF No. 3 at 4). It did provide an estimation of water flow, but it provided no details as to how to address that flow. *Id*. It described a result it wished to achieve—a dry construction site—and allowed Ames discretion as to how to achieve that goal. *Id*. Because there is a performance specification at issue here, the implied warranty of plans and specifications does not apply. The court grants summary judgment for the county as to Ames's second cause of action.

### E. Breach of Implied Covenant of Good Faith and Fair Dealing

"An implied covenant of good faith and fair dealing exists in every Nevada contract and essentially forbids arbitrary, unfair acts by one party that disadvantage the other." *Frantz v. Johnson*, 999 P.2d 351, 358 n.4 (Nev. 2000).

> With respect to the covenant of good faith and fair dealing, [the Nevada Supreme Court] ha[s] stated that "when one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are

James C. Mahan
U.S. District Judge

- 7 -

> thus denied, damages may be awarded against the party who does not act in good faith."

*Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (quoting *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991)) (alteration omitted).

To state a claim for breach of the implied covenant of good faith and fair dealing, a party must allege: (1) plaintiff and defendant were parties to a contract; (2) parties owed a duty of good faith to each other; (3) the opposing party breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) the alleging party's justified expectations were denied as a result. *See Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919 (Nev. 1991).

There is no dispute that Ames and the county were parties to a contract. There is also no dispute that the contract imposed a duty of good faith, as all contracts in Nevada do. *See Frantz*, 999 P.2d at 358 n.4 (Nev. 2000). Ames alleges that it justifiably relied on receiving a construction change authorization ("CCA") after the county issued CCAs to LVP, and that the county breached by not issuing Ames CCAs for similar requests. (ECF No. 3 at 12). Ames cannot use evidence of the county's behavior under a separate agreement with a third party to prove a breach of the implied covenant. *See Windisch v. Hometown Health Plan, Inc.,* No. 64020, 2015 WL 3649776 at *1 (Nev. June 9, 2015). To the contrary, the breach must be based only on conduct under the contract at issue. *See id.* Because all of Ames's allegations are predicated on the county's past dealings with a third party, the court grants summary judgment to the county on Ames's third cause of action.

*F. Unjust Enrichment*

"The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." 66 Am. Jur. 2d *Restitution* § 3 (1973). A defendant is liable for unjust enrichment when it "has and retains a benefit which in equity and good conscience belongs to another." *Unionamerica Mtg. v. McDonald*, 626 P.2d

**James C. Mahan**
**U.S. District Judge**

- 8 -

1272, 1273 (Nev. 1981). However, a party cannot bring an action for unjust enrichment when a written agreement exists. *See Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824 (Nev. 1977).

Here, Ames claims that the county was unjustly enriched because it has not paid Ames for the work it performed under the contract. (ECF No. 3 at 13). Because there is a written agreement between Ames and the county regarding work related to the bid, Ames must seek redress under the contract, not under a quasi-contractual claim like unjust enrichment. *See Lipshie*, 566 P.2d at 824 (Nev. 1977); *see also Medical Corp II. V. New Life Centers, LLC.*, 818 F. Supp. 2d 1271, 1276 (D. Nev. 2011; *Crockett & Myers, Ltd. v. Napier, Fitzgerald, & Kirby, LLP*, 440 F. Supp. 2d 1184, 1197 (D. Nev. 2006); (ECF No. 3). The court grants summary judgment to the county on Ames's fourth cause of action.

*G. NRS § 338.1435*

Ames claims that it was injured by the county's failure to conduct a constructability review pursuant to Nev. Rev. Stat. § 338.1435. (ECF No. 3 at 13–14). The county contends that the statute does not provide a private right of action and that it performed the review. (ECF No. 52 at 29–30).

Whether NRS § 338.1345 provides a private right of action appears to be an issue of first impression before this court. Assuming *arguendo* that a private right of action exists, Ames fails to create a genuine dispute of material fact. The statute does not require any documentary evidence of the review, nor does it require any public record be made of it. *See* Nev. Rev. Stat. § 338.1435. It requires only that the review occur. *See id.* Ames provides no evidence that the county did not conduct the review. (*See* ECF No. 3 at 13–14; 62 at 29–30). The court grants summary judgment to the county on Ames's fifth cause of action.

. . .
. . .
. . .
. . .
. . .
. . .

**James C. Mahan**
**U.S. District Judge**

*H. Negligent Misrepresentation*

Liability for negligent misrepresentation attaches to

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Halcrow v. Eighth Judicial Dist. Ct.*, 302 P.3d 1148, 1153 (2013).

Here, Ames alleges that the county's inclusion of the 9 cfs figure in its description of water flow amounted to negligent misrepresentation. (ECF No. 3 at 14–15). The county alleges that because Ames could have found alternate flow data, it is not responsible for its drastic underestimate. (ECF No. 52 at 28–29).

The authorities the county cites are distinguishable. *See John Massman Contracting Co.,* 23 Cl. Ct. at 32; *Walter D. Giertsen Co. v. State*, 148 N.W. 2d 741, 743 (Wis. 1967). In one instance, the contractor was explicitly directed to seek additional data beyond what was provided in the contract. *John Massman Contracting Co.,* 23 Cl. Ct. at 32. In the other, there was no affirmative representation of any data, and the contract required an investigation of the "conditions to be encountered." *See Walter D. Giertsen Co.* 148 N.W. 2d at 743 (Wis. 1967).

Ames would be liable if it had notice that it needed to independently corroborate the figure the county provided. *See id.*; *John Massman Contracting Co.,* 23 Cl. Ct. at 32. Here, Ames provides evidence that the county had information about flooding that it did not provide Ames. (ECF No. 62 at 13–14). The county provided Ames a figure, and Ames took that figure at face value. Nothing put Ames on notice to inquire any further. Even in a site visit, Ames's representative testified to only a small stream of water. (ECF No. 52 at 9). There was no way for Ames to know, under the terms of this contract, that there was a risk of severe flooding. The county did. (ECF No. 62 at 13–14.) Ames's sixth claim survives summary judgment.

*I. Cardinal Change*

The cardinal change doctrine is meant to prevent abuse from owners in performance contracts. *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1020 (Nev.

James C. Mahan
U.S. District Judge

2004).  A cardinal change must drastically alter the work agreed to such an extent that "the contractor effectively performs duties that are materially different from those for which the contractor originally bargained." *Id.*  But "[p]roject delays, out of sequence work, and increased costs fail to amount to a cardinal change." *Armada Concrete, LLC v. Jaynes Corp.*, No. 2:14-cv-02176-GMN-GWF, 2017 WL 3567523, at *8 (D. Nev. 2017).

Here, there was no substantial change to the work.  Even considering the water control needs and resulting delays, Ames substantially performed the work prescribed by the contract. (*Compare* ECF No. 62 at 9–10 (describing the scope of the project at the bidding stage) *with* ECF No. 62 at 16 (noting that the major changes resulting from the flooding were a change in sequence of the work and a delay)).  At completion, Ames had performed exactly what it contracted to do—build the Wash.  *See* (ECF No. 3 at 4; 52 at 26).  Delays and additional costs do not constitute substantial alterations to a contract without a change in the character of the underlying work.  *See Becho, Inc. v. United States*, 47 Fed. Cl. 595, 601 (2000)  The court grants summary judgment to the county on Ames's seventh cause of action.

*J. Impossibility/Impracticability*

The county argues that Ames cannot assert impossibility as a claim.  (ECF No. 52 at 30). Ames provides authority recognizing impossibility as a claim.  (ECF No. 62 at 30).

Nevertheless, under the test Ames cites, it fails to state a claim for impossibility.  *See Transatlantic Financing Corp. v. United States*, 363 F.2d 312, 315 (D.C. Cir. 1966).  To sustain a claim for impossibility, "first, a contingency—something unexpected—must have occurred. Second, the risk of the unexpected occurrence must not have been allocated either by agreement or by custom.  Finally, occurrence of the contingency must have rendered performance commercially impracticable." *Id.*

Here, something unexpected—the flooding—occurred.  (ECF No. 3 at 8).  However, the risk of that occurrence was allocated to Ames in the contract.  (ECF No. 52 at 4).  Any claim Ames might have about the accuracy of that representation is irrelevant when there was explicit assignment of the risk.  *L.W. Matteson v. United States*, 61 Fed. Cl. 296, 320 (2004).  For that

reason, Ames's impossibility claim fails. *Id.* The court grants summary judgment as to Ames's eighth cause of action.

## IV. Conclusion

In summary, the court grants summary judgment in favor of the county as to Ames's second, third, fourth, fifth, seventh, and eighth causes of action. The court denies summary judgment as to all other claims.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the county's motion for summary judgment (ECF No. 52) be, and the same hereby is, DENIED in part and GRANTED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that Ames's request for oral argument (ECF No. 66) be, and the same hereby is, DENIED.

DATED June 26, 2020.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 12 -